UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BIG SANDY RANCHERIA OF WESTERN
MONO INDIANS, et al.,

     Plaintiffs,

  v.

BROWNSTONE, LLC,

     Defendant.

1:11-cv-00198-OWW-GSA

MEMORANDUM DECISION REGARDING
MOTION TO DISMISS (Doc. 7)

## I. <u>INTRODUCTION</u>.

  Big Sandy Rancheria of Western Mono Indians and Big Sandy Rancheria Entertainment Authority ("Plaintiffs") proceed with an action for declaratory relief against Brownstone, LLC ("Defendant").

  Defendant filed a motion to dismiss Plaintiffs' complaint on March 2, 2011 under Federal Rule of Civil Procedure 12(b)(3) for improper venue. (Doc. 7). The motion centers on proper interpretation of a forum selection clause. Plaintiffs filed a first amended complaint ("FAC") on March 23, 2011. (Doc. 8). Plaintiffs filed opposition to the motion to dismiss on April 4, 2011. (Doc. 9).

## II. <u>FACTUAL BACKGROUND</u>.

  Plaintiff Big Sandy Rancheria of Western Mono Indians

("Tribe") is a federally recognized Indian Tribe.  Plaintiff Big Sandy Rancheria Entertainment Authority is a wholly owned instrumentality of the Tribe organized under Tribal Law as an authorized government agency.

On September 10, 1999, the Tribe and the State of California executed and entered into a "Tribal-State Gaming Compact" ("Compact") pursuant to the Indian Gaming Regulatory Act (25 U.S.C. § 2701 *et seq.*) ("IGRA").   The United States Secretary of the Interior approved the Compact on May 5, 2000.  *Inter alia*, the Compact sets forth specific and comprehensive licensing requirements pursuant to which entities designated as "Gaming Resource Suppliers" or "Financial Sources" must become licensed by the Tribe's Gaming Agency before providing any services to the Tribe.  In order to become licensed, an entity must submit a formal application from the Tribal Gaming Agency and must also submit to a State Certification process with the California Gambling Control Commission.

On May 21, 2002, the Tribe enacted the Big Sandy Rancheria Tribal Gaming Ordinance ("Gaming Ordinance") and adopted the Big Sandy Rancheria Tribal Gaming Regulations ("Gaming Regulations"); both were approved by the National Indian Gaming Commission on November 7, 2002.   The Gaming Ordinance established the Big Sandy Rancheria Gaming Commission ("Gaming Commission").   The Gaming Commission is responsible for carrying out the Tribe's regulatory responsibilities.

On January 16, 2007, the Tribe and Defendant executed a "Memorandum of Understanding" ("MOU") which memorialized their attempt to enter into a formal development, financing agreement,

**2**

and consulting agreement for a new casino, hospitality, and recreational project for the Tribe.  Pursuant to the MOU, the Tribe was to forego discussion with any entity other than Defendant with respect to contracts or agreements related to the development, construction, opening, financing, or on-going operation of the Tribe's proposed project.  The MOU provided that Defendant would advance $40,000.00 to the Tribe pursuant to a Credit Agreement the parties intended to enter into at a later date.

On or about March 25, 2007, the Tribe and Defendant executed two agreements as contemplated by the MOU: (1) a Development Agreement; and (2) a Credit Agreement.  The Development Agreement stated that Defendant would provide an array of services to the Tribe in connection with its gaming activities.  Defendant was to be paid a development fee equal to six percent of the total cost of the project.  The Development Agreement includes a provision that purports to relieve Defendant from any licensing requirements imposed under the IGRA, the Compact, the Gaming Regulations, or the Gaming Ordinance.   The Credit Agreement includes a similar exemption provision.

The Compact, Gaming Ordinance, and Gaming Regulations require Defendant's licensure in light of the terms and provisions of the Development Agreement and the Credit Agreement.  Defendant has never applied for or been granted any Tribal Gaming License, nor has Defendant ever submitted to a Suitability Determination by the California Gambling Control Commission.

On or about December 10, 2009, the Gaming Commission notified Defendant that it was required to be licensed.  The Gaming Commission requested that Defendant submit all necessary

**3**

applications within ten days.  Approximately thirty days later, Defendant responded to the Gaming Commission and asserted that it was not subject to licensing requirements pursuant to the exemption provisions entailed in the Development Agreement and Credit Agreement.  Defendant also asserted that it did not need to obtain any licensing because Defendant did not deem any of its services to the tribe to be "Gaming Resources."

The Gaming Commission reiterated its position in a letter to Defendant on February 9, 2010, noting that the contract language Defendant sought to rely on conflicted with the express terms of the Compact, the Gaming Ordinance, and the Gaming Regulations.  The Gaming Commission notified Defendant that until it received the necessary licenses, Defendant was to refrain from further contact with the Tribal Council or the Entertainment Authority.

On or about July 13, 2010, the Gaming Commission notified the Tribe of its "Findings of Regulatory Review of Brownstone, LLC and Associated Documents with resulting Business Relationships with the Big Sandy Entertainment Authority and the Big Sandy Rancheria Band of Western Mono Indians" ("the Findings").  Inter alia, the Findings provided that the Gaming Commission determined that the Development Agreement and Credit Agreement were "null and void" for failure to comply with the Compact, Gaming Ordinance, and Gaming Regulations.

On or about July 16, 2010, the Tribe notified Defendant that the Development Agreement, Credit Agreement, and the MOU were each null and void.  Defendant responded on July 22, 2010 and asserted that the agreements remained in effect and binding.  The Tribe responded on September 7, 2010 and reiterated its position, but

**4**

1   also indicated a willingness to entertain further proposals once

2   Defendant complied with applicable licensing provisions.  Defendant

3   refuses to submit to any licensing requirements and continues to

4   demand that the Tribe withdraw its licensing requirements.

5                       **III.  LEGAL STANDARD.**

6          Defendant moves to dismiss the complaint on the basis of forum

7   selection clauses contained in the parties' agreements.

8   Enforcement of a forum selection clause is an appropriate basis for

9   a motion to dismiss pursuant to Rule 12(b)(3).  Fed. R. Civ. P.

10  12(b)(3); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). In

11  adjudicating a motion to dismiss for improper venue under Rule

12  12(b)(3), pleadings need not be accepted as true, and facts outside

13  the pleadings may be considered.    *Id*.   Federal law applies to

14  interpretation of a forum selection clause under Rule 12(b)(3). *Id*.

15         Forum selection clauses are prima facie valid and should not

16  be set aside unless the party challenging enforcement of such a

17  provision can show it is "'unreasonable' under the circumstances."

18  *E.g., Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 325 (9th Cir.

19  1996). A forum selection clause is unreasonable if (1) its

20  incorporation into the contract was the result of fraud, undue

21  influence, or overweening bargaining power; (2) the selected forum

22  is so "gravely difficult and inconvenient" that the complaining

23  party will "for all practical purposes be deprived of its day in

24  court;" or (3) enforcement of the clause would contravene a strong

25  public policy of the forum in which the suit is brought. *Id*.

26  (citations omitted).

27  ///

28  ///

**IV. <u>DISCUSSION</u>.**

The parties' agreements each contain sections entitled "Forum Selection" which provide as follows:

> Each party hereto irrevocably and unconditionally submits, for itself and its property subject to the provision in this SECTION 8, to the exclusive jurisdiction for any claim arising hereunder of (i) the United States District Court for the Central District of California (of [sic] if such court determines it is unwilling or unable to hear any dispute, any other federal court of competent jurisdiction in the State of California) (and any court having appellate jurisdiction thereof) and (ii) if, and only if the federal courts identified in Section 6.02(I) [sic] determine that they lack jurisdiction over any claim arising hereunder, the Superior Court in and for Los Angeles County, California (of [sic] if such court determines it is unwilling or unable to hear the dispute, any other state court of [sic] in the State of California (and any court having appellate jurisdiction thereof) (collectively, the "<u>Applicable Courts</u>")

(FAC, Ex. K, Development Agreement at 13; Ex. L, Credit Agreement at 14).[1]   Defendant invokes the forum selection clauses as a basis for dismissal under Rule 12(b)(3).

**A. Scope of the Forum Selection Clauses**

Plaintiffs contend that their claims for declaratory relief are outside the scope of the forum selection clauses.  Plaintiffs cite *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) and *Cedars-Sinai Med. Ctr. v. Global Excel*

---

[1] Defendant's motion misquotes the forum selection provisions by substituting the word "or" in place of the word "of" in two separate clauses. (Doc. 7, Motion to Dismiss at 3). Although the syntax and apparent purpose of the forum selection provisions indicate that use of the word "of" instead of "or" was likely a typographical error (Plaintiffs do not contend otherwise), attorneys do not have license to substitute words they believe *should* have been included in a contract for the words that are actually set forth in the agreement when quoting contract provisions to a court.  At a minimum, typographical errors should be flagged by including the correct words in brackets, or by use of the term "[sic]." Presenting an edited contract provision as a direct quote in a pleading is inappropriate, particularly when an attorney's edits have a material impact on the force and effect of the provision.   *See* Fed. R. Civ. P. 11.

1  *Mgmt.*, Inc., 2010 U.S. Dist. LEXIS 139848 *14, 2010 WL 5572079 *5
2  (C.D. Cal. 2010) for the proposition that the phrase "any claims
3  arising hereunder" only encompasses claims "requiring the court to
4  interpret the agreements in the context of...performance under
5  them. [It] does not cover claims that merely relate to the
6  agreements, nor [does it] cover claims having their origin in the
7  agreements." (Doc. 9, Opposition at 3). Neither case cited by
8  Plaintiffs supports this reading of the forum selection clauses
9  contained in the Development Agreement and the Credit Agreement.

10  In *Mediterranean*, the Ninth Circuit interpreted, in the
11  context of an arbitration agreement, the phrase "arising
12  hereunder." The Ninth Circuit interpreted "arising hereunder" as
13  synonymous with the phrase "arising under the Agreement." 708 F.2d
14  at 1464. The Court then examined the scope of that phrase:

15  > The phrase "arising under" has been called "relatively
16  > narrow as arbitration clauses go." *Sinva, Inc. v.*
     > *Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.
17  > Supp. 359, 364 (S.D.N.Y. 1966). In *In re Kinoshita & Co.*,
     > 287 F.2d 951, 953 (2d Cir. 1961), Judge Medina concluded
18  > that when an arbitration clause "refers to disputes or
     > controversies 'under' or 'arising out of' the contract,"
19  > arbitration is restricted to "disputes and controversies
     > **relating to the interpretation of the contract** and
20  > matters of performance." Judge Medina reasoned that the
     > phrase "arising under" is narrower in scope than the
21  > phrase "arising out of or relating to," the standard
     > language recommended by the American Arbitration
     > Association. *Id.*
22

23  *Id.* (emphasis added). As Defendant points out, *Mediterranean*
24  establishes that the phrase "arising hereunder" encompasses claims
25  "relating to the interpretation...of the contract." *Id.*

26  *Cedars-Sinai* is of no help to Plaintiffs, as it says nothing
27  about the meaning of the phrase "arising hereunder." *Cedars-Sinai*
28  discusses generally the three categories of forum selection

clauses:

> First, the most limited forum selection clauses cover claims "arising under" the relevant agreement.
>
> Second, an intermediate category is occupied by forum selection clauses that govern disputes "arising out of or relating to" the contract. These clauses cover claims that have a significant relationship to the contract or have "their origin or genesis" in the contract.
>
> Third, at the most extreme end of the spectrum, some forum selection clauses purport to govern "all claims" without qualification.

*Cedars-Sinai*, 2010 U.S. Dist. LEXIS 139848 *14 (citations omitted). In discussing the scope of the first and most limited type of forum selection clause, *Cedars-Sinai* cites *In re Kinoshita*. *Id.* As noted in *Mediterranean*, *Kinoshita* holds that the phrase "arising under" encompasses "disputes and controversies relating to the interpretation of the contract." *Mediterranean*, 708 F.2d at 1464 (citing *Kinoshita*, 287 F.2d at 953).

The FAC asserts two causes of action, each of which arise under the contract as alleged by the FAC's express terms. The FAC's first cause of action alleges "there is an actual and justiciable controversy relating to the legal rights and duties of Plaintiffs and Defendant *under the Development Agreement*." (FAC at 22). Similarly, the second cause of action alleges "there is an actual and justiciable controversy relating to the legal rights and duties of Plaintiffs and Defendant *under the Credit Agreement*." (FAC at 22). *Inter alia*, the FAC seeks a declaration from the court that "the two agreements...impermissibly encumber Indian lands." (FAC at 2). It cannot be denied that the FAC calls on the court to interpret the parties' agreements respecting the need for a license. Absent interpretation of the parties' respective rights and duties

1  under the contract, Plaintiffs' claims cannot be adjudicated.

2  Plaintiffs' claims for relief fall within the ambit of the forum

3  selection clauses. *See, e.g., Mediterranean*, 708 F.2d at 1464

4  (holding that phrase "arising hereunder" covers disputes and

5  controversies "relating to the interpretation of the contract")

6  (citing *Kinoshita*, 287 F.2d at 953).

7  **B. Exclusivity Entailed by the Forum Selection Clauses**

8      Plaintiffs contend that the forum selection clauses are

9  permissive, rather than mandatory. (Opposition at 6). Plaintiffs

10 argue that the language of the forum selection clauses does not

11 establish exclusive jurisdiction in the United States District Court

12 for the Central District of California, because the forum selection

13 clauses contemplate jurisdiction in other California courts.

14 Plaintiffs' argument misses the mark. That the forum selection

15 clause does not establish the Central District as the *only* possible

16 venue for litigation does not provide for alternative fora. A forum

17 selection clause, like any other contractual agreement, must be

18 construed and enforced according to the plain meaning of its terms.

19 *E.g., Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77

20 (9 th Cir. 1987) (noting that plain meaning must be afforded to

21 words contained in a forum selection provision). Here, the forum

22 selection clauses specifically state that the forum of first resort

23 for claims arising under the parties agreements is the United State

24 District Court for the Central District of California. Plaintiffs

25 do not contend otherwise.

26     Plaintiffs' citations to *Northern Cal. Dist. Council of*

27 *Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th

28 Cir. 1995) and *Krish v. Balasubramaniam,* 2006 U.S. Dist. LEXIS 76194

* 14-16 (E.D. Cal. 2007) are of no avail, as neither case involved forum selection clauses similar to the parties' agreements.  The forum selection clause in *Pittsburg-Des Moines Steel Co.* "mandate[d] nothing more than that the Orange County courts have jurisdiction." 69 F.3d at 1037.  In *Krish*, the court acknowledged that, in order to justify dismissal under Rule 12(b)(3), "[a] forum selection clause needs to contain additional language mandating that venue be in a particular place."  2006 U.S. Dist. LEXIS 76194 * 14.  The subject forum selection agreements contain language mandating that suit must first be brought in the Central District; only if that court "determines it is unwilling or unable to hear any dispute" is suit in another district appropriate.  (FAC, Ex. K, Development Agreement at 13; Ex. L, Credit Agreement at 14).

**C. Remedy**

Plaintiffs request that this case be transferred rather than dismissed, and Defendant does not oppose transfer of this case to the Central District.  (Reply at 4).  The court finds that a transfer, as opposed to a dismissal, is in the interest of justice.

**ORDER**

For the reasons stated, this case is TRANSFERRED to the United States District Court for the Central District of California, Los Angeles Division.

IT IS SO ORDERED.

Dated:   **April 21, 2011**                              **/s/ Oliver W. Wanger**
                                                    UNITED STATES DISTRICT JUDGE